IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 7:13-CV-20-FL

| | |
|---|---|
| JOY C. BELL, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     ORDER |
| ERIC H. HOLDER, ATTORNEY | ) |
| GENERAL, U.S. DEPARTMENT OF | ) |
| JUSTICE, | ) |
| | ) |
|     Defendant. | ) |

This employment discrimination action is before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, directed to plaintiff's claim of retaliation, and motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), directed to her claim of gender discrimination (DE 24). Plaintiff responded in opposition, and defendant replied. In this posture, the issues raised are ripe for disposition. For the following reasons, the court GRANTS defendant's motions.

**STATEMENT OF THE CASE**

Plaintiff, an employee of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Complex ("FCC") in Butner, North Carolina, filed complaint on November 25, 2008, with the Equal Employment Opportunity Commission ("EEOC"). (DE 32-1, Exh. 1). Plaintiff that she has been "retaliated against in the form of non-selection for general foreman at FCC Oakdale, Louisiana due to my active participation in protected EEO Activities involving myself and my husband's (Bruce Bell) protected EEO activities." *Id.* On December 9, 2010, the EEOC held a video teleconference

hearing which included plaintiff, FCC Butner Associate Warden Eric Weaver, FCC Oakdale Associate Wardens Tamyra Jarvis and Ken Everhart, FCC Oakdale Warden Joseph Young, and South Central Regional Director Gerardo Maldonado. (DE 32-12, Exh. 3). On October 3, 2011, the EEOC dismissed plaintiff's complaint, finding that plaintiff had failed to establish a *prima facie* case of retaliation because she had failed to prove that "the responsible management officials were aware of her or her spouse's prior EEO activity." (DE 32-1, Exh. 3).

On January 27, 2012, plaintiff filed *pro se* complaint in the United States District Court for the Western District of Louisiana for damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000 *et seq.* (DE 1). She alleges that plaintiff was "retaliated against by her employer for engaging in prior EEO activity" and that she was also "discriminated against because of her gender, female." (*Id.*, p. 4). Plaintiff seeks injunctive relief, back pay and compensatory damages. On October 10, 2012, the Western District of Louisiana granted plaintiff's motion requesting a venue change and transferred the case to the Eastern District of North Carolina. (DE 17).

On April 24, 2013, defendant filed motions for summary judgment on plaintiff's retaliation claim and dismissal of plaintiff's gender discrimination claim (DE 31).[1] Plaintiff filed memorandum

---

[1] To support its motion, defendant relies on plaintiff's EEO complaint of discrimination (DE 32-1); the EEO report of investigation (DE 32-2) containing affidavits from Weaver (DE 32-4), Young (DE 32-5) and Everhart (DE 32-6); the merit promotion certificate and exception certificate for the FCC Oakdale general foreman vacancy (DE 32-7, DE 32-8); a copy of reference checks available and provided on candidates for the general foreman position (DE 32-9); written records supporting the employment decision (DE 32-10); an interrogatory of Maldonado (DE 32-11); a copy of the EEOC Decision (DE 32-12); and excerpts from plaintiff's EEOC hearing transcript (DE 32-13).

2

in opposition on June 11, 2013, with supporting materials (DE 36).[2]  Defendant's reply was received June 25, 2013.  (DE 39).

## STATEMENT OF UNDISPUTED FACTS

The relevant undisputed facts are as follows.  In 2008, Plaintiff applied for a vacancy announcement for the position of general foreman at the FCC in Oakdale, Louisiana.  (DE 32-12, p. 2).  At that time, plaintiff was employed as a maintenance mechanic supervisor at FCC Butner. (DE 1, ¶ 4).  Also at that time, the BOP's Office of Internal Affairs was investigating complaint against plaintiff's husband, Bruce Bell.  (DE 1, ¶ 26).  Plaintiff has prior EEO activity, although the record is unclear as to the details of that activity.  (DE 1, ¶ 5; DE 32, p.3).

The general foreman position is analogous to and at the same pay grade as the maintenance mechanic supervisor position.  (DE 1, ¶ 6).

Plaintiff contacted Associate Warden Jarvis at FCC Oakdale regarding her interest.  (DE 1, ¶ 9).  The two women had an acquaintance dating back to 2003.  (*Id.*).  For the purposes of its motion, the government assumed Jarvis had knowledge of prior EEO activity on the part of plaintiff and her husband.  (DE 32, p. 11, n. 1).  Jarvis' first-line supervisor at FCC Oakdale was Warden Young.  (DE 1, ¶ 10).  Maldonado, the Regional Director and selecting official for the general foreman position, was Jarvis' second-line supervisor. (*Id.*).

A BOP personnel staff office in Grand Prairie, Texas prepared certificates listing five candidates, including plaintiff, for the general foreman position.  It sent the certificates to relevant management officials involved with hiring and selection.  (DE 32, p. 4).

---

[2] Materials relied on in support of her opposition to the motion include an organizational chart of FCC Oakdale (DE 36-1), the application of the selectee for the general foreman position (DE 36-5), an e-mail sent from Jarvis to plaintiff (DE 36-19), and various excerpts from sworn statements of plaintiff, Jarvis, Maldonado, Young, Weaver, and Everhart.

3

Plaintiff's immediate supervisor at FCC Butner was Reynard McFadden, and her first-line supervisor was Associate Warden Eric Weaver. (DE 1, ¶¶ 16, 19). Weaver knew about plaintiff's prior EEO activity. (DE 36-13). He testified to giving a favorable reference check for plaintiff–though he could not recall the FCC Oakdale official who asked for the reference. (DE 1, ¶ 19). In her testimony, plaintiff stated that Weaver spoke with the FCC Oakdale general foreman and acting facility manager about the references. (DE 36-10).

FCC Oakdale Associate Warden Everhart was responsible for reviewing the resumes of candidates on the certificates, along with conducting reference checks and obtaining a voucher for those candidates. (DE 32-6, pp. 9-10; DE 32-13, p. 3). In the EEOC hearing, Everhart testified that he attempted to conduct a reference check and obtain a voucher for plaintiff through McFadden, but McFadden did not respond. (DE 32-13, p. 134). Everhart did not contact Weaver or speak to anyone at Butner regarding plaintiff. (DE 32-13, pp. 134, 143). Everhart submitted three recommendations to Warden Young, including a recommendation for Weatherford but not for plaintiff. (DE 32-12, p. 4). Everhart testified that he had no knowledge of any prior EEO activity from either plaintiff or Weatherford. (DE 32-13, p. 139-140; 146-147).

Young reviewed a packet of all the applicants, along with the reference checks provided by Everhart. (*Id.*, p. 178, 179, 180, 181, 185, 186, 192; DE 32-5, p. 6-8). He conducted secondary reference checks of the candidates checked by Everhart, and recommended the same three candidates to Regional Director Moldanado, giving top recommendation to Weatherford. (DE 32-5, p. 8-9; DE 32-10). Young had no knowledge of any EEO activity related to plaintiff or her husband. (DE 32-5, p. 9; DE 32-13).

Maldonado testified that he "usually focus[es] on the recommendations made by the warden

4

and the administrator" in making his selections. (DE 32-13, p. 209-210). He selected Weatherford based on recommendations from Young, reports received on Weatherford's "knowledge base," "the energy he possessed," and because the agency would not have to spend money to move Weatherford. (DE 32-13, p. 205). Maldonado had no knowledge of EEO activity by either Weatherford or plaintiff. (DE 32-13, p. 35, 199, 201-203).

Plaintiff has no evidence that Jarvis spoke to Maldonado regarding her or her husband's EEO activity. (DE 32-13, p. 38), nor evidence that Jarvis spoke to Young about the EEO activity of her or her husband. (DE 32-13, p. 43).

## DISCUSSION

A.  Dismissal of Gender Discrimination Claim

A failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300-301 (4th Cir. 2009). In order to exhaust these administrative remedies, a plaintiff must file a charge of discrimination within the EEOC before filing suit under Title VII. 42 U.S.C.A. § 2000e-5(f)(1). The civil action's scope is confined by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). A claim in federal court generally will be barred if it alleges discrimination based upon a separate basis than the basis asserted in the EEOC charge. Jones, 551 F.3d at 300.

Plaintiff's EEOC charge alleged retaliation due to her and her husband's "participation in protected EEO activities." (DE 32-1). She failed to allege gender discrimination, and she declined to respond to defendant's argument that the claim should be dismissed. Because an administrative

5

investigation for gender discrimination could not reasonably be expected to follow a charge of retaliation, this claim is dismissed under 12(b)(1). The court need not rule on defendant's alternative 12(b)(6) motion.

B.     Summary Judgment on Plaintiff's Claim of Retaliation

    1.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).

The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. Id. at 248-49. The "genuineness" of an alleged fact issue "must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communication Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

A jury should resolve conflicting inferences from circumstantial evidence. Ford Motor Co.

v. McDavid, 259 F.2d 261, 266 (4th Cir. S.C. 1958). However, "permissible inferences must still be within the range of reasonable probability," and the court should withdraw the case from the jury "when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* Whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995). Plaintiffs must provide more than "the mere existence of a scintilla of evidence" to prevail, "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

      2.      Plaintiff's Claim Fails to Establish a Genuine Issue of Material Fact

          a.      Legal Framework

Title VII prohibits employers from retaliating against employees for EEO activity. 42 U.S.C. § 2000e-3(a). The law distinguishes between "pretext" and "mixed motive" cases. Fuller v. Phipps, 67 F.3d 1137, 1141 (4th Cir. 1995). In a "pretext" case, plaintiff seeks to prove that defendant proferred a non-discriminatory reason for an adverse employment action that was a mere pretext for a discriminatory decision. *Id.* Pretext cases involve circumstantial evidence of discrimination and are analyzed under the McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Parker v. Danzig, 181 F. Supp. 2d 584, 589 (E.D. Va. 2001). Alternatively, in cases involving decisions motivated by both legitimate and discriminatory reasons, plaintiffs may bring a claim under a "mixed-motive" theory which considers whether the discriminatory factor "was a motivating factor for any employment practice, even though other factors also motivated the practice." Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 317 (4th Cir. 2005).

7

b.  Pretext

Under the McDonnell Douglas analysis, plaintiff must first make out a *prima facie* case by showing: (1) engagement in a protected activity; (2) adverse employment action taken by the employer; and (3) a causal connection between the protected activity and the adverse employment action. Hill v.Lockheed Martin Logistics Mgmt. Inc., 354 F.3d 277, 298 (4th Cir. 2004). The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. If the employer carries its burden, plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for unlawful retaliation. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In this case, the parties do not dispute that the plaintiff and her husband have engaged in protected EEO activities. Nor do they dispute that the failure to select plaintiff constituted an adverse employment action. The dispute rests upon whether plaintiff has met the third prong of the *prima facie* test, causal connection.

In order to prevail on a retaliation claim, a plaintiff must show that relevant decisionmakers were aware of her contact with an EEO counselor or were aware of the filing of administrative complaint at the time the alleged retaliation occurred. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006). The "decisionmaker" can include subordinate employees whose decisions, reports or recommendations are merely rubber stamped by the formal decisionmaker. Hill, 354 F.3d at 291. However, the Fourth Circuit has held that "a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision" does not "become a decisionmaker simply because he had a substantial influence on the ultimate decision or

8

because he has played a role, even a significant one, in the adverse employment decision." *Id.*, at 291.

Plaintiff argues that a relevant decisionmaker had knowledge in three ways in this case. First, she asserts that Weaver, her first-line supervisor, knew of her EEO activity because he was a witness in that prior EEO case. (DE 1, ¶ 12). Second, she alleges that Jarvis knew about the prior cases that she and her husband had brought before the EEO, and that Jarvis communicated this information to Young. (DE 4, ¶¶ 23-26). Third, she argues that a September 23, 2008 email sent from Jarvis to plaintiff shows that Jarvis was told that she and her husband's prior EEO cases would prevent them from being selected–thus, that FCC Oakdale had a policy against EEO claimants. (DE 36, p. 8-9).

None of these asserted grounds creates a genuine issue of fact as to causal connection. Although Weaver knew about plaintiff's prior EEO activity, plaintiff has offered no evidence that he was a "decisionmaker" for her application at FCC Oakdale. Hill, 554 F.3d at 290-291. Nor does plaintiff allege that Weaver used this information against her when giving his reference. In fact, her complaint does not dispute that Weaver gave a favorable reference check–a fact which Weaver corroborated during his deposition testimony. (DE 32-4, Exh. A at 6). Her argument implies that Weaver disclosed her EEO activity to the formal decisionmakers. Yet she offers no evidence of any such communication.

The fact that Jarvis knew about the prior cases is irrelevant, given that Jarvis played no role in the formal selection process and that plaintiff has failed to provide any evidence that Jarvis ever communicated this information to the relevant decision-making officials (Everhart, Young, or Maldonado). Jarvis stated that she "may have" discussed plaintiff's application with Young, but

9

maintains that she would never have mentioned EEO activity. (DE 32-13, p. 91-92). Plaintiff asserts that "it is commonsensical to assume" that Young discussed plaintiff's application with Jarvis, and that it is "a very reasonable inference" that Jarvis informed Young of the prior EEO activity. This inference has no basis in the record, however, and it is flatly contradicted by the statements of Jarvis and Young. Plaintiff offers no other evidence of Jarvis' involvement in the selection process, and she cannot raise a genuine issue of material fact that the selecting officials had knowledge of her EEO activity through Jarvis. See Cox v. County of Prince William, 249 F.3d 295, 300 (4th Cir. 2001) (Plaintiffs "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another"); see also Williams v. Federal Express Corp., Case No. 3:97-CV-433-MU, 1999 U.S. Dist. LEXIS 20327, *23 (W.D.N.C. May 18, 1999)("Plaintiff's unsubstantiated assumption [that various managers knew about previous EEO charges], however, cannot create a genuine issue of material fact.").

Plaintiff produced an email dated September 23, 2008, sent to her by Jarvis. The email reads as follows.

> Bruce [plaintiff's husband] wrote to me and said the Warden [Young] was going to look into this case for him and asked him to get back with him in a few days. Please let me know what the Warden ends up telling him. In this region we cannot select anybody that has an open case. Now if the case has been closed and if the charges were NOT sustained, then you can be considered for a position here. The main questions Bruce should be asking the Warden are:
> *Has the case in question been closed or is it still open?
> *Were the charges sustained or not sustained against you?

(DE 36-19, Exh. R).

Plaintiff argues that this email provides "clear evidence" that she was "told directly" that she and her husband's prior cases would prevent them from being selected for positions. (DE 36). The court notes that plaintiff's interpretation of this message is dubious, given that the discussion of

10

"charges sustained or not sustained against you" seem to refer to the ongoing internal affairs investigation of plaintiff's husband, rather than any EEO activity. Yet even if the court accepts plaintiff's interpretation, the email cannot create a genuine issue of material fact. The only way that it could create knowledge on Young's part is by accepting the hearsay statement that plaintiff's husband told Young to look into the EEO case. However, "to be entitled to consideration on summary judgment, evidence supporting facts set forth by the parties must be such as would be admissible in evidence." Fed. R. Civ. P. 56(c), Sakaria v. Trans World Airlines, 8 F.3d 164, 171 (4th Cir. 1993). Furthermore, even if it was accepted, it fails to show knowledge on the part of Maldonado, the ultimate decisionmaker.

Plaintiff also pointed to excerpts from Jarvis' testimony. (DE 36-20, DE 36-21, DE 36-22). There, Jarvis responded to plaintiff's statement that "applications for positions [were] not being selected if he or she had an open or pending investigative case." (DE 36-20, DE 36-21). Although Jarvis verbally answered that she was "not aware of such a policy," she scratched out that answer on her review of the examination under oath, and signed a note on the examination providing that:

> Ms. Bell + I discussed this in reference to her husband applying for positions. I told her this could impact her husband's selection for a position. But I was incorrect in stating this because there was no policy that prohibited an applicant from being selected if they had an open case.

(DE 36-22)

Again, plaintiff's characterization of this note seems disingenuous, given that Jarvis was responding to a question about "an open or pending *investigative* case." (DE 36-20, 36-21) (emphasis added). The distinction between this investigative case and plaintiff's EEO case is clear from the next question posed by plaintiff's counsel: "Complainant believes her prior protected EEO and her spouse's pending investigative case litigation were considered during the selection

11

process..." (*Id.*)  Moreover, plaintiff's logic asks the court to accept that a statement denying a policy should be used to establish that the policy actually existed.  Finally, even accepting that such a policy existed, there is no evidence that the relevant decisionmakers knew about prior EEO activity from plaintiff or her husband and used that history against her.

Plaintiff has failed to establish that the decisionmakers at FCC Oakdale knew of her protected activity, much less that they used it against her.  She has thus failed to show causal connection between the adverse action and the protected activity.  Because plaintiff fails the test for a *prima facie* case of discrimination, the court's analysis need not consider other steps of the McDonnell Douglas framework.

c. Mixed-Motive Scheme

Section 703(m) of Title VII provides that an "unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).  In addition to the bases of discrimination detailed in that section, the Fourth Circuit has ruled that plaintiffs may also bring retaliation claims under the "mixed motive" theory.  Kubicko v. Ogden Logistics Servs., 181 F.3d 544 (4th Cir. 1999).  Under this avenue, a plaintiff may avert summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor...motivated the employer's adverse employment decision." Diamond, 416 F.3d at 318.

Plaintiff's mixed motive argument must fail for the same reasons as noted above–she has offered no evidence that would allow a reasonable jury to conclude that the relevant decisionmakers considered her EEO history when they declined to select her for the general foreman vacancy.  The

12

evidence merely supports that only two officials–Weaver and Jarvis–had knowledge of her prior EEO activity. Yet no evidence suggests that either official played a role in the decision not to select her or passed this information to decisionmakers. As discussed above, plaintiff's effort to characterize Jarvis' email and deposition statements as evidence of a policy against employees with EEO history clearly misinterprets that document and also fails to establish knowledge of EEO activity on the part of the relevant decisionmaker. Thus, the court grants defendant summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, defendant's motions for dismissal and summary judgment are GRANTED in accordance with this order.

SO ORDERED, this the 4th day of November, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge